**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DANIEL RODRIGUEZ, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> JANET NAPOLITANO, Secretary of ) <br> the Department of Homeland Security, ) <br> ) <br> Defendant. ) <br> ) | No. CIV 05-546-TUC-CKJ <br><br> **ORDER** |

Pending before the Court is Plaintiff's' Motion for New Trial [Doc. # 216] and Motion for Relief from Taxation of Costs [Doc. # 217]. Defendant has filed a response and Plaintiff has filed a reply. Although Defendant has requested oral argument, the Court finds it would not assisted by oral argument and declines to set this matter for hearing.

*Motion for New Trial*

Plaintiff Daniel Rodriquez ("Rodriquez") requests the Court to grant a new trial because the verdict is against the weight of the evidence, the conduct of the U.S. Attorney prohibited Rodriquez from receiving a fair trial, and the Court impermissibly favored Defendant. A new trial may be granted "in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Rule 59(a), Fed.R.Civ.P. The new trial may be granted, "even though the verdict is supported by substantial evidence, if 'the verdict is contrary to the clear weight of the evidence . . . or to prevent, in the sound discretion of the trial court, a

1  miscarriage of justice.'" *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir.
2  1999), *quoting Oltz v. St. Peter's Community Hosp.*, 861 F.2d 1440, 1452 (9th Cir.1988).
3  "However, a district court may not grant a new trial simply because it would have arrived at
4  a different verdict." *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814,
5  819 (9th Cir. 2001).

7  *Verdict Contrary to the Weight of the Evidence*
8  Rodriquez argues that the answers the jurors made to the interrogatories (no to all
9  questions) is contrary to the evidence presented.

11 *Verdict Contrary to the Weight of the Evidence – Hostile Work Environment*
12 Rodriquez asserts that he presented evidence that he was harassed by the employees
13 of the Border Patrol based on his national origin – this was substantiated by hospital records
14 and testimony of the Border Patrol agents who witnessed the abuse. Specifically, Agents
15 Cordero ("Cordero") and Pimental testified that they witnessed Agent Edmisten
16 ("Edmisten") destroying the forms filled out by Plaintiff. Additionally, Cordero testified that
17 Edmisten had a plan for Rodriguez – Rodriguez would be taken to Chino Canyon and left to
18 find the vehicle. Rodriquez argues that he testified that the actions of Edmisten were based
19 on discrimination because he was Puerto Rican and that evidence overwhelmingly supported
20 the fact that the environment was poisoned with racist animus specifically addressed to
21 Puerto Ricans, including defense witnesses admitting such comments were commonplace.
22 Indeed, Rodriquez argues that the suggestion that the statements were jokes and all in good
23 fun is legally incorrect – Rodriquez was offended and subjected to harassment because of his
24 national origin. Rodriquez also points to the deposition testimony of Agent McManus
25 ("McManus"), which was read to the jury, that he would sit in the dark in the middle of a
26 street waiting for Rodriguez to name the street they were on and that he did not train
27 Rodriguez in Border Patrol procedure because Rodriguez did not know the street names –
28 Rodriquez testified that McManus referred to his national original while badgering him about

1  the street names. Additionally, Rodriquez testified regarding his reaction to Agent LaLonde
2  ("LaLonde") stating the Puerto Ricans would taking over the station, disputing LaLonde's
3  attempt to explain the statement as a joke and all in good fun.

4      Defendant asserts, however, that the evidence in its entirety did not demonstrate any
5  serious or pervasive hostility or that any hostility was connected to Rodriguez' national
6  origin. Defendant argues that the jury was free to disbelieve Rodriguez' characterization of
7  the events. Defendant asserts evidence was presented to show that Rodriguez was not forced
8  to do more at Kino Springs than any other agent and, therefore, the trip to the hospital was
9  not caused by mistreatment. Further, Defendant asserts that no witness corroborated
10 Rodriguez' testimony that paper was thrown in his face. Defendant also asserts that evidence
11 was presented that Edmisten would not have left Rodriguez helpless in Chino Canyon, any
12 race-based comments were few and lacked discriminatory animus, and that street-quizzing
13 was appropriate given the importance of area orientation in Nogales and Rodriguez'
14 difficulty in learning it.

15     While the Court has the discretion to assess the evidence under the standard of against
16 the clear weight of the evidence, that standard for warranting a new trial is high. *See Roy v.*
17 *Volkswagen of America*, 896 F.2d 1174, 1176 (9th Cir. 1990) (the court is not justified in
18 granting a new trial merely because the court might have reached a different result). The
19 Ninth Circuit has stated:

20 > On the one hand, the trial judge does not sit to approve miscarriages of justice. His
21 > power to set aside the verdict is supported by clear precedent at common law and, far
   > from being a denigration or a usurpation of jury trial, has long been regarded as an
22 > integral part of trial by jury as we know it. On the other hand, a decent respect for the
   > collective wisdom of the jury, and for the function entrusted to it in our system,
23 > certainly suggests that in most cases the judge should accept the findings of the jury,
   > regardless of his own doubts in the matter . . . If, having given full respect to the
24 > jury's findings, the judge on the entire evidence is left with the definite and firm
   > conviction that a mistake has been committed, it is to be expected that he will grant
   > a new trial.
25

26 *Landes Const. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371-72 (9th Cir. 1987),
27 *internal quotation and citations omitted.* "The judge can weigh evidence and assess the
28 credibility of witnesses, and need not view the evidence from the perspective most favorable

to the prevailing party." *Id.*

Defendant presented substantial and credible evidence in defense of Rodriguez' claim of a hostile work environment. Further, Rodriguez' claims that the conduct was based on Rodriguez' national origin were based on speculation and circumstantial evidence. That the jury chose to not agree with Rodriguez as to the reason for the conduct does not mean the verdict was against the great weight of the evidence. Further, that evidence of Rodriquez' current position may have supported his credibility and claims, as argued by Rodriquez, fails to acknowledge that the case law is clear that such evidence is not admissible under Fed.R.Civ.P. 403 and 404. *See e.g., Zubulake v. UBS Warburg LLC*, 382 F.Supp.2d 536, 543 (S.D.N.Y. 2005) (evidence of plaintiff's prior employment to show propensity for deficiency was inadmissible under Fed.R.Evid. 403); *EEOC v. Serramonte*, 237 F.R.D. 220, 224 (N.D.Cal. 2006) ("[w]ork performance with other employers, either before and after the defendant employer, is not admissible under Rule 404(a) . . ."); *Raugh v. Coyne*, 744 F.Supp. 1181, 1184 (D.D.C. 1990) (evidence of plaintiff's positive performance at jobs both before and after employment with the defendant was inadmissible under Rules 403 and 404(a)); *Zenian v. District of Columbia*, 283 F.Supp.2d 36, 40 (D.D.C. 2003) (evidence of negative performance prior to time period during which discrimination occurred was both irrelevant and inadmissible under Rule 404(a)). Indeed, Rodriquez' insistence that the admission of such evidence would have changed the verdicts supports a conclusion that the admission of the evidence would have resulted in a verdict based on an inappropriate basis – conduct at a different job rather than the existence of a hostile work environment or whether the termination was based on discrimination. The Court cannot say that she is left with the definite and firm conviction that a mistake has been made or that the verdict on the hostile environment claim was against the great weight of the evidence.

*Verdict Contrary to the Weight of the Evidence – Termination*

Rodriquez additionally argues that the evidence established that the Border Patrol was aware of Rodriquez' complaints of discrimination. Agent Crowley ("Crowley") admitted that

1  Rodriguez told him about the discrimination and that Crowley had informed his supervisor,
2  Agent Scudder ("Scudder"), of the complaints. Additionally, Agent Plymale stated to Crowley
3  that it is important to document this matter in case the matter ends up in court and requested an
4  eleventh hour performance memo from Crowley documenting something negative about
5  Rodriguez' performance. Crowley recommended Rodriguez' termination and Scudder was also
6  involved in the decision. Rodriguez also points to his testimony that he had not seen numerous
7  Conduct and Efficiency Evaluation Forms ("C & Es") signed by Agent Hecht and that
8  Defendant did not present any evidence refuting the fact that those C & Es were prepared to
9  make the termination decision look supportable. Rodriguez argues that the C & Es of
10 supervisors Edmisten and LaLonde were based on discrimination, the Border Patrol know
11 of discrimination allegations, Rodriguez' file had been "papered" to support the termination
12 decision and, therefore, it is against the clear weight of the evidence to determine that
13 discrimination was not at least a motivating factor in the decision to fire Rodriguez.
14 Rodriquez argues that Defendant did not present any other reason for the termination, instead
15 relying on the impermissible misleading of the jury that Rodriquez was incapable of being
16 an effective law enforcement officer.

17 Defendant asserts that the evidence presented at trial of Rodriguez' performance
18 evaluations demonstrated that Rodriguez had problems, from beginning to end, in key areas
19 of his training. Defendant asserts that the jury could conclude that no official was being
20 discriminatory in Rodriguez' evaluations because even those agents who Rodriguez
21 described as fair still found significant problems with his performance. Defendant argues
22 that there was compelling evidence from which the jury could reasonably conclude that
23 Rodriguez' evaluations and termination were not premised in any way, as a sole or
24 motivating factor, on Rodriguez' national origin but, rather, on Rodriguez inability to
25 perform successfully as a Border Patrol agent.

26 Defendant presented substantial and credible evidence in defense of Rodriguez' claim
27 of wrongful termination. Indeed, Defendant presented evidence of a non-discriminatory
28 reason for Rodriguez' termination – poor performance reviews. Again, the admission of

- 5 -

evidence regarding Rodriguez' current position could only have resulted in a verdict based on inappropriate evidence. The Court cannot say that she is left with the definite and firm conviction that a mistake has been made or that the verdict was against the great weight of the evidence. Weighing all the testimony and assessing the credibility of the witnesses, the Court finds the verdicts were consistent with the clear weight of the evidence.

*Verdict Based on False Evidence*

Rodriguez asserts the Assistant U.S. Attorney, after arguing to preclude admission of Rodriguez' current duties and performance as a federal law enforcement officer with the United States Department of Defense on relevance grounds, stated in closing argument that Rodriguez' dream of being a Border Patrol Agent was never a possibility because Rodriguez did not have what it takes to be a federal law enforcement officer. Because no objection was made during closing argument, Rodriguez asserts the Court should utilize a plain or fundamental error analysis to review the defense attorney's argument.

Rodriguez asserts that the unfairness of the argument is supported by the defense attorney's conduct in banging on the podium and repeatedly telling the jury that Rodriguez' case was nonsense and that Rodriguez simply did not have what it takes to be a law enforcement officer. Rodriguez argues that this made Rodriguez out to be a liar, leading the jury to discount Rodriguez' testimony and that of his supporting witnesses. Rodriguez also asserts that the defense attorney's argument that Rodriguez was just a greedy failure who could never perform the duties asked of him was a lie and not supported by the facts.[1] Further, the only reason the defense attorney could make this argument was because he had moved to exclude the evidence that contradicted it. Additionally, in his Reply, Rodriguez points out that, in a Motion in Limine, the government argued that whether "Plaintiff [was] eventually hired as a policeman, and supposedly is doing well, has no relevance to this case."

---

[1] The Court notes that a review of the transcript of the closing argument fails to support Rodriquez' claim that defense counsel argued that Rodriquez was a "greedy failure."

- 6 -

1  Defendant's Motions in Limine, p. 2.

2  Defendant asserts the Rodriguez' argument is not supported by the record. Defense
3  counsel argued:

> What you have to understand is that we all have dreams about what we'd like to do, what we think in some circumstances we can do. But there are certain types of jobs that are just ill-suited for certain types of personalities. And when it comes to Border Patrol, Border Patrol takes a very special set of skills.

Reporter's Transcript ("RT"), 12/9/08, p. 3. Counsel further argued:

> Border Patrol is special, and Border Patrol is an agency that relies on folks, on agents who can work by themselves in the dark, and remote canyons, taking on – and you've heard testimony from everybody, including Mr. Rodriguez, not just one-on-one, not just one-on-five, but sometimes one-on-ten, one-on-twenty, one-on fifty.
>
> * * * * *
>
> This not a soft and cuddly agency, or a soft and cuddly police job. This is real police business out in the wilderness. The training reflects that.
>
> Now, Mr. Rodriquez had problems is some very key areas. And every single agent got up there and testified that when it came to these C & Es, there were some really important areas. Punctuality, appearance, and all that stuff is nice, but it's knowledge of the job; it's how you apply that knowledge to the job; it's your judgment; and your adaptability to these new situations. That's what they're looking for when you become a Border Patrol agent.

RT, 12/9/08, p. 4.

Reversal on grounds of attorney misconduct is granted only when the misconduct permeates an entire proceeding such that "the jury was necessarily influenced by passion and prejudice in reaching its verdict." *Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1107 (9th Cir. 1991). To permeate a trial the misconduct does not have to occur throughout the whole trial, but the jury must have been "necessarily prejudiced." *Bird v. Glacier Elec. Coop., Inc.*, 255 F.3d 1136, 1145 (9th Cir. 2001).

Moreover, the Ninth Circuit has held that a party should object to alleged instances of attorney misconduct before the jury deliberates to allow the district court "to examine the alleged prejudice and to admonish [] counsel or issue a curative instruction, if warranted." *Kaiser Steel Corp. v. Frank Coluccio Constr. Co.*, 785 F.2d 656, 658 (9th Cir. 1986). Absent an explanation for the failure to object, the failure to make a contemporaneous objection "firmly bars relief for misconduct." *See id.* In *Kehr v. Smith Barney, Harris Upham & Co.,*

- 7 -

*Inc.*, 76 F.2d 1283 (9th Cir. 1984), the Ninth Circuit affirmed the district court's denial of a motion for a new trial, in part because opposing counsel did not object to the alleged misconduct during closing argument or move for a mistrial. *Id.* at 1286. The court recognized, however, that "constant objections are certainly not required, as they could antagonize the jury." *Id.*, *citation omitted*. Rodriquez failed to object or move for a mistrial during closing argument (or even thereafter before the jury began its deliberations). Rodriquez has failed to provide an explanation for this failure. Relief is barred.

Moreover, the Ninth Circuit has stated:

> The trial court, which "is in a far better position to gauge the prejudicial effect of improper comments than an appellate court which reviews only the cold record," [*Kehr v. Smith Barney, Harris Upham & Co., Inc.*, 76 F.2d 1283, 1286 (9th Cir. 1984)], found it was not. As in *Kehr*, the alleged misconduct occurred only in the argument phase of the trial; as in *Kehr*, the remarks were isolated rather than persistent; [footnote omitted] as in *Kehr*, most of counsel's comments were not objected to at trial and appellants did not move for a mistrial at the end of the argument.

*Cooper*, 945 F.2d at 1107. In this case, Rodriquez alleges misconduct occurred during closing arguments. However, counsel for Defendant did not compare a Border Patrol agent position with Rodriquez' current position. Rather, he was arguing reasonable inferences regarding the difficulty of the Border Patrol position from the evidence presented at trial. Indeed, the Ninth Circuit has stated:

> That [counsel] had no direct evidence supporting these arguments is of little consequence; circumstantial evidence and inference are sufficient to support a legitimate argument. [Counsel] is not a prosecutor, subject to "constraints and responsibilities that don't apply to other lawyers." *United States v. Kojayan*, 8 F.3d 1315, 1323 (9th Cir. 1993). As an advocate in a civil lawsuit, he was perfectly entitled to argue that the jury should disbelieve the opposing party's witnesses for any number of reasons, including that they may have been guided by advice of their lawyers. The sanction for making such an argument is that it may boomerang if it does not resonate with the jury.

*Settlegood v. Portland Pub. School*, 371 F.3d 503, 520 (9th Cir. 2004). Here, evidence had been presented as to the demands of the Border Patrol position and counsel was perfectly entitled to argue that the jury should disbelieve Rodriquez and his supporting witnesses and should reject Rodriquez' interpretation of the evidence. The Court disagrees with Rodriquez that the only reason the defense attorney could make this argument was because he had

- 8 -

1 moved to exclude the evidence that contradicted it. Counsel was discussing the particular
2 requirements to become a Border Patrol agent. Comparison to law enforcement positions in
3 general, as opposed to a law enforcement position with the Navy, was a perfectly reasonable
4 inference for counsel to argue. Counsel for Defendant did not lie or misstate the evidence
5 during closing argument in order to inflame and mislead the jury. Defense counsel's
6 argument that Rodriquez is "supposedly" doing well at his new job in a document that was
7 not before the jury does not alter this fact. Rather, the comments accurately characterized
8 the evidence and his comments were within the bounds of fair advocacy. *See Settlegood*, 371
9 F.3d 503 at 520.

10 Rodriguez also asserts that the defense attorney misled the Court and the jury by
11 moving for the admission of Defendant's Exhibit 144 and eliciting testimony that the
12 document was sent to the Border Patrol by Rodriguez – rather than the document actually
13 sent by Rodriguez.[2] Although the jury was ultimately instructed to disregard the evidence
14 and testimony, Rodriguez argues this was a deliberate attempt to mislead the Court and the
15 jury. Defendant asserts that record actually shows that defense counsel referred to the letter
16 as a draft during questioning and elicited testimony that the letter was the version that
17 Rodriquez wanted to send to Border Patrol, but that Agent De La Paz ("De La Paz")
18 discouraged or attempted to discourage him from sending it out as written. In other words,
19 Defendant asserts that defense counsel did not mislead the Court or the jury.

20 The Court finds defense counsel did not elicit testimony that the document was sent
21 to Border Patrol by Rodriquez and, in fact, the evidence elicited by defense counsel was not
22 misleading.

23 As to defense counsel's attempt to admit the document, this document was not the
24 subject of a pre-trial ruling finding it to be inadmissible. Counsel's attempt to admit this
25 document does not constitute misconduct. Further, the Court did not admit the document and

26

27
28    [2]Rodriguez refers to Trial Ex. 144. However, the letter written by Plaintiff after he was terminated from Border Patrol was Ex. 121.

- 9 -

1  directed the jury to disregard any testimony regarding the exhibit. Response, Attachment C.
2  When a district court gives curative instructions, there is a strong presumption that the jury
3  follows those instructions. *Doe v. Glanzer*, 232 F.3d 1258, 1270 (9th Cir. 2000); *see also*
4  *United States v. Sarkisian*, 197 F.3d 966 (9th Cir. 1999) ("Given that the district court
5  sustained the objection, coupled with the district court's earlier instruction to the jury . . ., if
6  there was any error, it was harmless.").

7  Rodriguez also argues that the defense attorney's conduct in filing a frivolous Rule
8  50 motion on a claim that was not listed in the Joint Pre-Trial Order and then moving to
9  amend the Pre-Trial Order was prejudicial, inappropriate, and appears to have been done in
10 bad faith. Defendant asserts that Rodriquez does not, and cannot, explain how the motion
11 – which was argued outside the presence of the jury and denied by the Court – prejudiced
12 him. The Court agrees with Defendant. This alleged misconduct could not have necessarily
13 influenced the jury by passion and prejudice in reaching its verdict. *Cooper*, 945 F.2d at
14 1107. A new trial on this basis is not appropriate.

16 *Evidentiary Ruling Unfairly Prejudiced Rodriguez and Unfairly Supported Defendant*

17 Rodriguez argues that the Court's rulings that Rodriguez' current duties and
18 performance were not admissible and that Rodriquez' subsequent employment applications
19 could be referred to to prove Rodriguez was not truthful unfairly prejudiced Rodriguez and
20 unfairly supported Defendant. Rodriguez points to the duties he is required to perform in his
21 current position and asserts that Defendant's argument that Rodriguez was incapable of being
22 a federal law enforcement officer would have been proven false if this evidence would not
23 have been precluded by the Court. Rodriguez asserts that the preclusion of the evidence
24 allowed the defense to mislead the jury. However, the record does not support Rodriquez'
25 assertion that defense counsel argued that Rodriquez was incapable of being a federal law
26 enforcement officer. Rather, counsel argued that Rodriquez was ill-suited for a position as
27 a Border Patrol agent and that Border Patrol is an agency that relies on agents who can work
28 by themselves in the dark, in remote canyons, and out in the wilderness and can deal with

1 many people at one time. As previously stated, evidence regarding the duties of Rodriquez' 2 current position and his performance in completing those duties were not admissible. 3 Whether Rodriquez was required to or could complete the same, similar, or completely 4 different duties as a border patrol agent in his current position is not relevant to whether he 5 could, and did, complete those duties while employed as a Border Patrol agent. A new trial 6 on this basis is not warranted.

*Appearance of Impropriety*

Rodriguez asserts that the defense attempted to introduce the misleading draft of the letter to Border Patrol through De La Paz. Rodriguez asserts that De La Paz' wife was present at De La Paz' home when Rodriguez went to the De La Paz home after his termination for help in drafting a letter to the Border Patrol. De La Paz' wife, an employee of the Clerk of the Court, was present in the courtroom around the time of the trial. Rodriguez asserts that, although his counsel was advised of the relationship during trial, that was before the attempted introduction of the false information concerning the letter. Additionally, counsel did not know that De La Paz' wife was present at the house at the time in question. Rodriguez asserts that this appearance of impropriety raises questions of the integrity of the trial process.

Defendant asserts that there could be no impropriety where the jurors were unaware of the relationship. Defendant additionally asserts that there is no evidence or suggestion that the employee's position as an audio visual technician affected any ruling or the outcome of the verdict.

Rodriquez has not provided, nor has the Court found, any support for Rodriquez' position that this alleged appearance of impropriety warrants a new trial. Indeed, "when there is no claim that the trial will be tainted, appearance of impropriety is simply too slender a reed on which to rest a disqualification [of counsel] order except in the rarest of cases." *Board of Ed. of City of New York v. Nyquist*, 590 F.2d 1241, 1247 (2nd Cir. 1979). In this case, there is no claim that the evidence presented to the jury was tainted or that the

- 11 -

proceedings were tainted by the alleged appearance of impropriety. The Court finds this alleged appearance of impropriety does not warrant a new trial.

*Opposition of Taxing Costs to Rodriguez*

Rodriguez requests the Court to deny that taxing of costs to him. In support of this request, Rodriguez asserts that, while Fed.R.Civ.P. 54(d)(1) creates a presumption in favor of awarding costs to a prevailing party, the district court has the discretion to refuse to award costs to a prevailing party. *Ass'n of Mexican-American Educators v. California*, 231 F.3d 572, 592 (9th Cir. 2000). Appropriate reasons for denying costs may include a losing party's limited financial resources, misconduct by the prevailing party, and "the chilling effect of imposing . . . high costs on future civil rights litigants." *Mexican-American Educators*, 231 F.3d at 592, n. 15; *see also Champion Produce, Inc. v. Ruby Robinson Co., Inc.*, 342 F.3d 1016, 1022-23 (9th Cir. 2003). The Ninth Circuit has also acknowledged that other circuits have found additional appropriate reasons including close and difficult issues in the case, nominal or partial recovery by prevailing party, good faith litigation by losing party, and, perhaps, a landmark issue of national importance. *Id.*, *citations omitted*.

Rodriguez asserts that he has limited financial resources – he has been unemployed or underemployed from 2004 to 2007. Rodriguez asserts that the litigation of the case has created a financial hardship for him, but he believed the principle of fighting for a workplace free of discrimination was important. Rodriguez compares his circumstances to Defendant who is a federal agency with an annual budget of over $50 billion. Rodriguez asserts he should not be required to pay the costs of Defendant. Rodriguez also asserts that U.S. Attorney's misconduct, as set forth in the Motion for New Trial, which permitted the defense to mislead the jury, is an additional basis for denying the taxation of costs.

Rodriguez also asserts that the imposition of costs would have a chilling effect on future civil rights litigants. He asserts that he successfully defended against a Motion to Dismiss, a Motion for Summary Judgment, and an improper Rule 50 Motion in pursuing a valid claim. Rodriguez asserts that civil rights litigants cannot be expected to pursue such

- 12 -

1 claims if they are then required to pay the costs that the federal government incurs.
2 Rodriguez further argues that his case was close, difficult, and litigated in good faith.
3 Indeed, Rodriguez asserts that, from the onset, he stated he wanted to serve his county as a
4 Border Patrol agent and that he should not be punished through the taxation of the costs.

5 Defendant points out that Fed.R.Civ.P. 54(d) creates a presumption in favor of
6 awarding costs to the prevailing party. *Russian River Watershed Protection Committee v.*
7 *City of Santa Roas*, 142 F.3d 1136, 1144 (9th Cir. 1998); *see also Save Our Valley v. Sound*
8 *Transit*, 335 F.3d 932, 945 (9th Cir. 2003) ("the losing party must show why costs should not
9 be awarded"). While Defendant agrees that limited financial resources may be considered
10 by the Court, *Save Our Valley*, 335 F.3d at 945, Defendant asserts that the defense costs
11 sought in this case are extremely nominal. Further, Defendant asserts that if Rodriquez'
12 argument is adopted, the government would always be disqualified from recovering its costs
13 given its size compared to the individuals who sue it. *See Burroughs v. Hills*, 741 F.2d 1525,
14 1538 (7th Cir. 1984) (Posner, J. concurring) (addressing similar argument noting that "[m]ost
15 taxpayers are person of limited means; most government revenue is raised from such persons,
16 and not from the wealthy few").

17 Defendant also disputes Rodriguez' assertion that the imposition of costs would have
18 a chilling effect on future civil rights cases. Defendant asserts that there is nothing unusual
19 about this case which will chill future civil rights cases and that Rodriquez must have known
20 that, under current case law, if Rodriquez pursued this matter through trial and lost,
21 Defendant would be entitled to costs. *See e.g., Save Our Valley*, 335 F.3d at 945 (affirming
22 award of costs to prevailing defendant in § 1983 and Title VI action under Rule 54(d) and
23 concluding that the district court need not specify the reasons for its decision); *Chavez v.*
24 *Tempe Union High School District No. 213*, 565 F.2d 1087, 1095 (9th Cir. 1977) (affirming
25 award of costs to prevailing defendants in § 1983 and Title VII action under Rule 54(d)).

26 Defendant also asserts that Rodriquez' motion required that transcripts be purchased
27
28

by the defense to dispute Rodriquez' factual assertions which were unfounded.[3] Defendant asserts that Rodriquez' counsel should have exercised "restraint before leaping to reckless accusations of sanctionable misconduct." *Bartronics v. Power-One, Inc.*, 245 F.R.D. 532, 538 (S.D. Ala. 2007).

The Court finds Rodriquez has not sufficiently overcome the presumption that Defendant is entitled to costs as the prevailing party. *See generally* 35B C.J.S. Federal Civil Procedure § 1304 (2008); *see also Save Our Valley*, 335 F.3d at 946 (because $5,310.55 is a relatively small sum, district court may conclude that imposition of costs would not chill future civil rights litigation). Rodriquez did not file his Complaint *in forma pauperis*, and there is no evidence in the record that would support the conclusion that his finances are so limited as to support the nonpayment of costs. Moreover, contrary to Rodriquez' assertion, there is no evidence of misconduct on the part of the government. Additionally, the verdict in favor of the government was complete and there is no basis to conclude that the issues were particularly close or difficult. Further, this case does not present a landmark issue of national importance. Accordingly, imposing costs on Rodriquez is appropriate.

Accordingly, IT IS ORDERED:

1. The Motion for New Trial [Doc. # 216] is DENIED.
2. The Motion for Relief from Taxation of Costs [Doc. # 217] is DENIED. Defendant is entitled the costs in the amount of $5,065.95 as set forth in the Amended Notice of Filing Bill of Taxable Costs.

DATED this 10th day of April, 2009.

_____
Cindy K. Jorgenson
United States District Judge

---

[3]Defendant has submitted an Amended Bill of Costs to include the additional expense of the transcripts.

- 14 -